IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN RAY VOIGT,

                               OPINION AND ORDER

               Plaintiff,

                               13-cv-170-bbc

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Kevin Voigt is seeking review of a decision denying him disability insurance benefits and supplemental security income under the Social Security Act.  42 U.S.C. § 405(g).  The administrative law judge who decided the case concluded that plaintiff had severe impairments that interfered with his ability to perform his past work but found that he was not disabled because he could still perform unskilled sedentary work.

Plaintiff contends that the administrative law judge erred by 1) not giving proper weight to the opinion of a registered nurse who treated him for two years; and 2) relying on boilerplate language and unsupported findings in his credibility assessment.  I find that the administrative law judge properly evaluated the registered nurse's opinion using factors set forth in Social Security Ruling 06-03p and that substantial evidence in the record supported his credibility determination.  Accordingly, I am affirming the decision.

The following facts are drawn from the administrative record (AR).

1

FACTS

A.   <u>Work History, Claimed Disability and Application for Benefits</u>

At the time of the administrative hearing, plaintiff Kevin Ray Voigt was a 42-year-old man with a high school diploma and a two-year technical degree.  AR 54-55.  Plaintiff has not maintained a job for more than one year since the late 1990s, when he worked as a machinist for "a couple of years."  AR 57.  He also worked as a machinist for a few months in 2000 and as an order processor for approximately one week in 2001.  AR 56-57.  Plaintiff last worked in 2002, when he served for a few months as a maintenance provider at an apartment complex.  AR 56.  He alleges that he has suffered from depression, bipolar disorder and back pain since 2002.  AR 58.  Plaintiff also alleges that he began having intestinal problems at some point after 2002.  AR 58.

On December 7, 2009, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits.  AR 22, 152, 156.  In those applications, plaintiff alleged that he had been unable to work since September 1, 2002, citing a "disabling condition."  AR 152.   The local disability agency denied plaintiff's application on February 16, 2010, and again upon reconsideration on June 28, 2010.  AR 73-76, 78-81.  Plaintiff requested a hearing, which was held on December 13, 2011 before Administrative Law Judge John Pleuss.  AR 22, 32.

2

B.  Medical Records

1.   St. Clare Health Mission records

Plaintiff pursued treatment for back pain, intestinal problems and depression at St. Clare Health Mission at various times between January 4, 2001 and October 21, 2009.  AR 251-66.  Progress notes from May 19, 2005 state that "plaintiff applied for jobs, but due to 'past history,' has not been hired.  Plaintiff states he has hit a new low in his depression." AR 260.

2.   Debra Day's progress notes

Plaintiff first met with registered and advanced practice psychiatric nurse Debra Day on October 21, 2009, when she conducted a mental health status examination of plaintiff and recorded a global assessment of functioning score of 50 (indicating serious symptoms or serious impairment in social, occupational or school functioning).  AR 268-70.  At Day's suggestion, plaintiff began a trial use of Cymbalta.  AR 269.  On October 28, 2009, plaintiff attended a follow up meeting with Day and told her that he had not taken the Cymbalta because he was concerned about possible side effects.  AR 267.

On December 23, 2009, one week after plaintiff began taking Cymbalta, he met with Day for fifteen minutes.  AR 331.  At this visit, Day recorded a global assessment of functioning score of 55 (indicating moderate symptoms or moderate difficulty in social, occupational or school functioning).  AR 331.  Plaintiff next met with Day on March 29,

2010, when he reported an increasing ability to remain calm when provoked.  AR 324.  Day

again recorded a global assessment of functioning score of 55.  AR 324.

Between October 13, 2010 and October 28, 2011, plaintiff attended five 20-30

minute medication evaluation and follow up appointments with Day.  AR 63, 388.  When

plaintiff wished to discuss his treatment in more detail, Day reminded plaintiff that sessions

were to be brief and referred him to a psychotherapist.  AR 388, 393.  His appointments

with Day included the following:

- On October 13, 2010, Day reported that "[plaintiff] states that he is taking medication and it is helping him," "he says that things are going well for him" and "[i]t is very remarkable progress that he has had." AR 383.  Day recorded a global assessment of functioning score of 65 (indicating some mild symptoms and some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful personal relationships).  Id.

- On January 13, 2011, Day noted "[plaintiff] reports that he is taking medications and [they] are helping him" . . . "he [appeared] to be doing relatively well . . . getting along with people without . . . major incidents or issues." AR 385.  Day also noted that plaintiff had worked with others on his goal of legalizing marijuana, tolerated others' opinions without direct anger and was improving his family relationships.  AR 385.  She recorded a global assessment of functioning score of 70.  AR 385.

- On April 4, 2011, Day noted that plaintiff had experienced a peer conflict after forgetting to take his medication.  AR 387.  She also noted that though plaintiff was having difficulty with neighbors, he was "not exploding and trying to measure his response." AR 387.  Day recorded a global assessment of functioning of 70.  AR 387.

- On September 19, 2011, Day reported that plaintiff reported continued illegal drug use and expressed frustration with neighbors and police.  AR 388.  Day added Abilify as a medication and recorded a global assessment of functioning score of 65.  AR 390-91.

4

- On October 28, 2011, Day recorded a global assessment of functioning score of 65, noting that plaintiff denied side effects from his medication.  AR 392.

3.    Day's mental residual functional capacity questionnaire

In her undated mental residual functional capacity questionnaire, Day reported that plaintiff suffered from a "mood disorder" and "Bipolar type rapid cycling."  AR 368.  She reported a "current assessment of functioning" of 65 and noted that his highest ever global assessment of functioning score was 70 .  AR 368.  Day also noted that she had prescribed Cymbalta and that dizziness was the sole potential work-related side effect.  Day indicated that plaintiff had "difficulty thinking or concentrating" and anticipated that he would miss more than four work days per month.  AR 369, 372.

In evaluating plaintiff's ability to conduct work-related activities on a day-to-day basis in a regular work setting, Day found plaintiff "limited but satisfactory" in four of twenty-four categories.  AR 370-72.  She found plaintiff "seriously limited, but not precluded" in nine categories, and "unable to meet competitive standards" in the following twelve categories: maintaining regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; carry out detailed instructions; set realistic goals or make plans independently of

5

others; deal with stress of semiskilled and skilled work; maintain socially appropriate behavior; and travel in unfamiliar places.  AR 370-72.

4.  Roberta Mack treatment notes

On October 18, 2011, plaintiff saw nurse Roberta Mack on a referral for self-medicating issues.  AR 394-97.  Her treatment notes state that "[plaintiff] reports difficulty concentrating . . . several days over the last [two] weeks."  AR 395.  Under the "attention and concentration" section of plaintiff's mental status exam, Mack recorded "[a]ttention is focused with no observed difficulty maintaining concentration throughout the course of the interview."  AR 397.  Mack also recorded that plaintiff had conducted research on possible medications, both at Day's direction and on his own initiative.  AR 404, 403.

5.  State medical consultant opinions

State medical consultant Mina Khorshidi, M.D., conducted a physical residual capacity assessment of plaintiff on February 12, 2010.  AR 293, 300.  Khorshidi noted that plaintiff could stand for two hours and sit for six hours in a workday.  AR 294.  She also noted that plaintiff had an unlimited ability to push and pull, could occasionally lift ten pounds and could frequently lift less than ten pounds.  AR 294.  Khorshidi recorded no established communicative, environmental, visual, postural or manipulative limitations.  AR 295-97.  She noted that "[m]edical evidence supports the establishment of a [residual functional capacity] limiting [claimant] to work at the sedentary exertional level."  AR 300.

6

Additionally, state medical consultant Jack Spear, Ph.D., conducted a mental residual capacity assessment of plaintiff on February 15, 2010.  AR 301-03.  Spear rated plaintiff as "not significantly limited" in his capacity to sustain 17 out of 20 categories of mental activities throughout the workday and workweek, including all eight categories related to "sustained concentration and persistence."  AR 301-02.  He rated plaintiff as "moderately limited" in the following three categories: ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 302.  Spear rated plaintiff's degree of limitation with "difficulties maintaining concentration, persistence, or pace" as mild and concluded that "[he] is assessed [as having a] mood disorder and anxiety.  Despite these problems, [he] is capable of performing and sustaining at least the basic mental demands of unskilled work."  AR 315, 303.  In affirming Spear's assessment, state medical consultant Roger Rattan, Ph.D., wrote that plaintiff was "unremarkable" in his concentration and attention difficulties.  AR 365.

C.   The Administrative Law Judge's Decision

On January 4, 2012, the administrative law judge issued a written decision finding that plaintiff was not disabled.  AR 31.  He concluded that plaintiff had the severe impairments of right greater trochanteric bursitis, intestinal fissure, depression and bipolar disorder.  AR 25.

After considering the medical records, hearing testimony, family questionnaires and state agency medical consultant reports, the administrative law judge adopted the state medical consultants' opinion that plaintiff retained the residual functional capacity to perform unskilled sedentary work. AR 30. He noted that the record contained no opinions from "treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." AR 29. Regarding plaintiff's residual functional capacity, the administrative law judge found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not credible" only to the extent they are inconsistent with the residual functional capacity assessment. AR 29. Relying on the vocational expert's testimony, the administrative law judge found that plaintiff would be able to perform work as an assembly worker, packager, office helper and security guard. AR 31.

The Appeals Council affirmed the administrative law judge's decision on January 11, 2013. AR 10-12. Plaintiff now seeks judicial review of that decision.


OPINION

The court must find the commissioner's findings of fact "conclusive" so long as they are supported by "substantial evidence," 42 U.S.C. § 405(g), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010). The decision cannot stand if it lacks evidentiary support or "is so poorly

8

articulated as to prevent meaningful review." <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002). The administrative law judge need not address every piece of evidence in the record, but must build a logical and accurate bridge from the evidence to his conclusion. <u>O'Connor-Spinner</u>, 627 F.3d at 618; <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff challenges two aspects of the administrative law judge's decision to deny him benefits: his failure to give proper consideration to Day's medical opinion, in violation of Social Security Ruling 06-03p, and his reliance on a flawed credibility assessment that relied on impermissible boilerplate language and was otherwise unsupported by the record.

### A.   <u>Day's Opinion</u>

Plaintiff argues that the administrative law judge failed to give proper consideration to the assessment of registered nurse Debra Day. Although the administrative law judge noted that Day had completed a mental residual questionnaire, he found that she was not an "acceptable medical source." AR 29. The commissioner has established a regulatory framework that explains how an administrative law judge must evaluate medical opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c). Treating source opinions are generally entitled to controlling weight. 20 C.F.R. §§ 404.1502; 404.1513(a). However, only "acceptable medical sources," such as licensed physicians, can be characterized as treating sources. 20 C.F.R. §§ 404.1513(a), 404.1502.

Opinions from other medical sources such as Day cannot be used to establish an impairment, but they are important. As stated in Social Security Ruling 06-03p:

> Information from . . . "other sources" [such as nurse practitioners] cannot
> establish the existence of a medically determinable impairment. . . However,
> information from such "other sources" may be based on special knowledge of
> the individual and may provide insight into the severity of the impairment(s)
> and how it affects the individual's ability to function.

SSR 06-03p, at 2-3.  See also Barrett v. Barnhart 355 F.3d 1065, 1067 (7th Cir. 2004)

("Although Barrett is wrong to argue that a physical therapist's report should be given

controlling weight, such reports are entitled to consideration.").  The ruling further explains

that adjudicators should consider the same factors in weighing opinions from "other"

medical sources that they use in weighing opinions from "acceptable" medical sources,

including the length and frequency of the treatment relationship, the consistency of the

opinion with other evidence, the source's speciality and the degree to which the source

presents relevant evidence to support the opinion.  20 C.F.R. § 404.1527(c).

Plaintiff argues that the administrative law judge was required to give Day's opinion

greater weight because she conducted "objective testing" on "eight separate occasions" and

had access to plaintiff's records from La Crosse County Human Services.  He argues that the

administrative law judge failed to evaluate Day's opinion under § 404.1527(c) and instead

provided a "blanket rejection of this evidence." Dkt. #13 at 24-27.  In support, plaintiff

cites several cases in which the court granted remand because the administrative law judge

failed to analyze a medical opinion.  Smith v. Commissioner of Social Security, 2010 WL

1838366, at *11 (N.D. Ind. May 6, 2010) (adjudicator failed to mention treating

physician's opinion); Laabs v. Astrue, 2011 WL 2115902, at *12 (E.D. Wis. 2011)

(adjudicator disregarded physical therapist's opinion because it was not verified by

physician); <u>Dogan v. Astrue</u>, 751 F. Supp. 2d 1029, 1037 (N.D. Ind. 2010) (adjudicator noted registered nurse was not acceptable medical source and failed to analyze her opinion); <u>Forrester v. Astrue</u>, 2011 WL 4601146, at *9 (N.D. Ind. Sept. 30, 2011) (adjudicator failed to explain why he gave treating physician's opinion little weight)).

Contrary to the cases cited by plaintiff, however, the administrative law judge did not merely state that Day was not an "acceptable medical source" and refuse to evaluate her opinion. He went on to consider the factors articulated in SSR 06-03p, specifically noting that Day saw plaintiff briefly on only a few occasions and that her treatment notes were internally inconsistent and did not support the responses on the questionnaire that she completed for plaintiff. AR 29. In particular, the administrative law judge noted that plaintiff's reports of social improvement after using Cymbalta contradicted her later opinion that he would be unable to function appropriately. AR 28. <u>See also</u> AR 383-84, 386, 388, 393. For example, the administrative law judge emphasized that once plaintiff began taking prescribed medication more consistently in December 2009, he did well and got along with others:

> So long as he took medication as prescribed, he described during treatment how he was able to stay calm in stressful situations, how his mood was level headed, how he was 'getting along with people without having any major incidents or issues,' and how his symptoms had 'greatly improved' without any side effects.

AR 28 (citing AR 327-28, 323-24, 383-86). The administrative law judge also correctly noted that plaintiff experienced increases in his complaints of antisocial behavior and his symptoms when he refused to take medication, took medication not prescribed to him or

missed appointments.  AR 28 (citing AR 290, 387-89).  Similarly, he noted that plaintiff had not displayed notable cognitive difficulties that would prevent him from understanding, remembering and carrying out instructions.  Finally, the administrative law judge pointed out that Day gave plaintiff global assessment of functioning scores inconsistent with her opinion that plaintiff would be unable to perform competitive work.

Plaintiff takes issue with the administrative law judge's reliance on global assessment of functioning scores as evidence of his ability to work.  Citing Punzio v. Astrue, 630 F.3d 704, 710-11 (7th Cir. 2011), plaintiff argues that this score represents only a "snap shot of [a] single moment [that] says little about [plaintiff's] overall condition."  In Punzio, the court of appeals found that the administrative law judge had failed to provide a sound explanation for disregarding a treating physician's opinion in favor of a global assessment of functioning score.  Id. at 710 (citing 20 C.F.R. § 404.1527(d)(2)).  The administrative law judge had cited one global assessment of functioning score that he found "inconsistent with the physician's current rating of claimant's functioning."  Id.  The court of appeals noted that the administrative law judge had "cherry picked" one data point that undermined the treating source's overall position, emphasizing that he should have analyzed whether the source's questionnaire conflicted with the source's treatment notes as a whole.  Id.  Unlike the physician in Punzio, however, Day is not a treating source whose opinion is due controlling weight, and even if she were, the administrative law judge did not make the error the court identified in Punzio.

The administrative law judge did not scour the record for a single global assessment of functioning score.  Instead, he cited a range of scores that Day herself recorded between 2009 and 2011:

> [T]he treatment record rates the [plaintiff's] global assessment of functioning between 55-65, which represents only moderate to mild impairment . . . The nurse herself stated that the claimant had a global assessment of functioning of 65-70.  Yet, the nurse suggested that in almost every area the [plaintiff] would be unable to meet or would be seriously limited in his ability to meet competitive work standards.

AR 29.  See also AR 268, 323, 330-31, 383-92.  Although initially Day found plaintiff to have a global assessment of functioning score of 50, she later prescribed him Cymbalta and noted that it greatly improved his condition.  AR 268, 331, 383-84.  Every later recorded score was 55 or higher.  AR 268, 330-31, 383-92.  Therefore, instead of selecting one "snapshot" of plaintiff's condition, the administrative law judge considered plaintiff's functioning throughout the course of his treatment with Day.

Plaintiff also generally challenges the administrative law judge's statement that he has not displayed any notable cognitive difficulties that would prevent him from understanding, remembering and carrying out instructions.  Without explanation or support in the record, he states that the administrative law judge is well aware of "the fact that cognitive limitations are not required for limitations in understanding, remembering and carrying out instructions.  People with affective disorder are found with such limitations all the time."  Id.  There is no evidence in the record that links any of plaintiff's specific diagnoses with these symptoms and he fails to provide any explanation for his argument.

13

The administrative law judge adequately explained his reasoning with respect to plaintiff's alleged cognitive difficulties, noting that plaintiff "has had no difficulty maintaining concentration and is able to persist at activities like online research." AR 28 (citing AR 285-89). He pointed to treatment notes indicating that plaintiff stayed up at night to blog and participate in online gaming. AR 344, 377. In addition, he noted that Dr. Spear, a state medical consultant, rated plaintiff as "not significantly limited" in all eight categories under "sustained concentration and persistence." AR 301-02. Plaintiff has not refuted these findings.

In sum, I am satisfied that the administrative law judge did not make a blanket rejection of Day's opinion and that he gave proper consideration to the factors in SSR 06-03p. He explained his reasoning and connected his findings to substantial evidence in the record. It was not error for him to reject Day's opinion.

## B.   Credibility Assessment

An administrative law judge's credibility determination is generally entitled to deference because he has the ability to see and hear the testimony. Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010). This deference, however, is not absolute. Id. An administrative law judge must consider a number of factors imposed by regulation. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186. He also must support credibility findings with evidence in the record, Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009), building an "accurate and logical bridge" between the evidence and his decision. Castile, 617

14

F.3d at 929. A credibility determination will be overturned only if it is "patently wrong."
Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2007).

Plaintiff criticizes the administrative law judge for generally finding that his statements were not "credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 27. Plaintiff is correct that the Court of Appeals for the Seventh Circuit has frequently admonished administrative law judges for using similar language and "[implying] that the ability to work is determined first and is then used to determine the claimant's credibility." Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)); Punzio, 630 F.3d at 709; Martinez v. Astrue, 630 F.3d 693, 696-97 (7th Cir. 2011). However, use of this "boilerplate" language is not grounds for dismissal if the administrative law judge also points to evidence of record that "justifies his credibility determination." Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013).

In this case, the administrative law judge supported his credibility determination with several findings. First, he noted that plaintiff did not seek regular treatment between 2002 and 2008 and that his complaints during this period rarely related to his alleged impairments. AR 27 (citing AR 244-66). The administrative law judge noted that, even when the complaints became more regular, plaintiff described his pain as intermittent. AR 28. He emphasized that plaintiff's home computer activity contradicted his claims of limited sitting ability and noted that plaintiff's treatment recommendations, including stretching, weight loss and increased activity, did not indicate a disabling impairment. AR 28 (citing

15

AR 285-89, 376-77).  The administrative law judge also noted that although plaintiff alleged intestinal problems, the record showed that he made infrequent complaints of relevant symptoms and had refused a gastrointestinal examination.  AR 28 (citing AR 255-56, 378).  Finally, he noted that plaintiff frequently discontinued or elected not to pursue mental health treatment recommendations.  AR 28 (citing AR 257, 267-70, 281).

Although plaintiff challenges each of these reasons, in most cases he has failed to develop any argument and simply labeled them as "empty."  As a result, those challenges are waived.  Strong v. Wisconsin, 544 F. Supp. 2d 748, 754 (citing Pruitt v. City of Chicago, 472 F.3d 925, 930 (7th Cir. 2006) (party forfeited arguments by "devot[ing] only a sentence or two to each")).  I will now address plaintiff's properly raised challenges.


1.    Lack of treatment

Plaintiff argues that the administrative law judge's finding that he sought very little treatment between 2002 and 2008 contradicts Social Security Ruling 96-7p, which provides that "the adjudicator must not draw any inferences about an individual's symptoms and the functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain [infrequent treatment]."  SSR 96-7p.  See also Shauger, 675 F.3d at 696-97 ("Although a history of sporadic treatment or failure to follow a treatment plan undermine . . . credibility, an [administrative law judge] must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

16

Plaintiff argues that the record demonstrates that his "lack of treatment was related to financial issues and the availability of funds for medical experts." Dkt. # 13 at 33. Citing Moss v. Astrue, 555 F.3d 556, 562 (7th Cir. 2009) and Craft v. Astrue, 539 F.3d 668, 679 (7th Cir. 2008), he stresses that when the record indicates a financial explanation for a lack of treatment, the administrative law judge must make himself fully aware of the circumstances before determining credibility. Dkt. # 13 at 30-33. In Craft, the record contained numerous medical records indicating an inability to pay for regular treatment and medicine. Craft, 539 F.3d at 679. In Moss, the record contained evidence that plaintiff was financially unable to afford recommended treatment because of insurance coverage issues. Moss, 555 F.3d at 562. There is no indication in the record in this case, however, that plaintiff had financial difficulties obtaining medical care or pursuing treatment.

Plaintiff argues that a number of items of record should have put the administrative law judge on notice that further inquiry was needed. Dkt. #13 at 32. For example, plaintiff points to evidence that he had had access to free medical care and applied for financial assistance for a colonoscopy in 2009. Id. (citing AR 244-46). However, neither plaintiff's hearing testimony nor the record indicates that plaintiff was unable to get a colonoscopy because he lacked funding. In fact, in discussing the colonoscopy, the administrative law judge cited a progress note that reported "fear" was the reason plaintiff did not consent to the procedure. AR 28 (citing AR 255-56).

Plaintiff also refers to a notation in the record that plaintiff "is familiar with the free clinic, but declines services there at this time, but continues to self-medicate with alcohol,

17

Vicodin, and Xanax." Dkt. #13 at 33 (citing AR 399). However, plaintiff does not explain why this information shows that financial matters barred his access to medical care. It is reasonable to conclude from the record that plaintiff knew he could obtain free medical treatment because he had done so in the past but chose not to do so because he did not need treatment at that time. Further, it also appears that he was able to afford other non-prescription substances, indicating that he would have had some funds to pay for prescribed medical care.

Finally, plaintiff did not raise lack of funding or insurance as an issue at the hearing, although he was represented by an attorney. AR 51-68. An administrative law judge is obligated to develop a full and fair record, but he is "entitled to assume that a claimant represented by counsel is making his strongest case for benefits." Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987).

In sum, I am not persuaded that the administrative law judge should have pursued a more detailed explanation of plaintiff's finances in considering his lack of treatment, when the record did not indicate that plaintiff failed to obtain treatment for financial reasons. Further, even if the administrative law judge erred in not considering plaintiff's alleged financial barriers, that error was not fatal because he had other valid reasons for his credibility determination. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the [administrative law judge's] determination lacks any explanation or support that we will declare it to be patently wrong.").

2.   Daily activities

Plaintiff contends that the administrative law judge inappropriately considered his ability to do online research as evidence that he can perform full-time, competitive work. As plaintiff notes, an administrative law judge "may consider a claimant's daily activities when assessing credibility, but [he] must explain perceived inconsistencies between a claimant's activities and the medical evidence." Jelinek v. Astrue, 662 F.3d 805, 812-13 (7th Cirt. 2011); Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009)).

Although the administrative law judge questioned plaintiff's alleged concentration difficulties because plaintiff was able to persist at activities like online research, he also found that treatment notes indicated that plaintiff had little difficulty maintaining concentration. AR 28.  Substantial evidence supports this conclusion.  For example, Day first mentioned plaintiff's concentration difficulty in her undated mental residual functional capacity questionnaire, AR 369, but her treatment notes do not specifically mention his concentration at all.  AR 328-333, 382-393.  In addition, the administrative law judge cited the October 18, 2011 progress note of nurse Roberta Mack, who stated that plaintiff "reports difficulty concentrating . . . several days over the last [two] weeks."  AR 28; 395. However, under the attention and concentration section of plaintiff's mental status exam, Mack recorded "[a]ttention is focused with no observed difficulty maintaining concentration throughout the course of the interview."  AR 397.  Mack's notes also reflect that plaintiff completed research on possible medications, both at Day's direction and on his own initiative.  AR 401, 403.  Finally, none of the state medical consultants referred to a severe

19

concentration impairment, ranking plaintiff's difficulties in maintaining concentration, persistence, or pace as mild or unremarkable. AR 310, 315, 319, 365. Plaintiff fails to identify any contradictory evidence in the record. Dkt. # 13 at 35-37.

Although the administrative law judge considered plaintiff's daily activities in assessing whether his alleged difficulties in concentration were credible, he also based his decision on the medical evidence and explained his reasoning. As a result, I find that the administrative law judge did not err in making his credibility determination.


ORDER

IT IS ORDERED that plaintiff Kevin Roy Voigt's motion to summary judgment, dkt. #12, is DENIED and the the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 15th day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge